[No. 64453-5.   En Banc.]

Argued May 20, 1997.    Decided December 18, 1997.

THE STATE OF WASHINGTON, *Petitioner*, v. PAUL E. PETERSON, *Respondent*.

*John D. Knodell III, Prosecuting Attorney,* for petitioner.
*Paul J. Wasson II,* for respondent.

MADSEN, J. — The State petitions for review of a Court of Appeals' decision vacating Defendant Paul Peterson's second degree assault conviction. The court held that an amendment of the information to the inferior degree crime of second degree assault after the judge had reached his verdict was untimely. We reverse.

## FACTS

Defendant was originally charged by information with the crime of first degree assault. On the day of trial, the judge granted the State's motion to amend the information to add an alternative count of attempted second degree murder. Defendant then waived his right to jury trial and the matter was tried to the bench.

According to the findings of fact entered by Judge Sperline following the trial, Defendant and the victim, Julie (Thompson) Mathews, spent the day of May 19, 1994, together drinking alcohol and driving around looking for a place to target shoot. Being unsuccessful in that effort, Defendant drove to the shores of Banks Lake. By about

8:00 p.m., the two had stopped at the lake. Ms. Mathews was sitting on a protruding rock overlooking the lake. She was intoxicated. The two had been arguing. Defendant approached Ms. Mathews rapidly from behind and pushed her off the rock into the water. The water was approximately two feet deep. Defendant walked out into the water where Ms. Mathews had landed, grabbed her by the neck and head, and held her head under the water. Ms. Mathews was flailing her arms, attempting to get free. At one point, her head emerged above the water and she screamed "I can't swim." Clerk's Papers (CP) at 55, 58, 97. Defendant held her head under the water continuously for 10 to 15 seconds until he finally released her and she scrambled up the bank to the car. While under water, Ms. Mathews did not know if she was going to drown or survive; she felt the burning of water in her nose and her lungs. She was terrorized. Defendant pursued Ms. Mathews to the car, where, while she cowered on the ground, he beat her with his fists and kicked her until he was ordered to stop by witnesses who had arrived in response to Ms. Mathews' screams.

At the close of the evidence, defense counsel argued that the State had failed to show "grievous bodily harm," an element of first degree assault. Verbatim Report of Proceedings (RP) at 111.[1] He stated that "this is the type of case where the court should very seriously consider any lesser included offense. And I think the court really can consider lesser included offense[s] up to and including Assault in the Fourth Degree." Id. The prosecutor responded, "I agree with counsel that we have not, we don't have grievous bodily harm here that was actually inflicted. I would certainly concede that. There's no evidence of that."

---

[1]RCW 9A.36.011 provides that "[a] person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:

". . .

"(c) Assaults another and inflicts great bodily harm."

"Grievous bodily harm" is an element of former RCW 9A.36.020, assault in the second degree.

*Id.* at 114. Nevertheless, the prosecutor argued that the elements of either attempted second degree murder or first degree assault had been proved.

The judge found the State had not proved an intent to kill Ms. Mathews. *Id.* at 117. Likewise, he found that Defendant's actions were not likely to, nor had they in fact, caused "grievous bodily injury." *Id.* The judge then suggested that Defendant might be guilty of assault in the second degree under former RCW 9A.36.021(1)(g) (assault by torture) (now RCW 9A.36.021(1)(f)) "as a lesser included offense." RP at 118. He also suggested the possibility of entering a conviction on the crime of simple assault. The judge then concluded that, absent a motion for reconsideration at sentencing, he was finding the Defendant guilty of second degree assault.

Defense counsel objected on the basis that second degree assault by torture is not a lesser included offense of first degree assault. The State then moved to amend the information to second degree assault. The motion was granted over defense objection. Defendant subsequently received a standard range sentence for the crime of second degree assault.

Defendant appealed, arguing that the form of second degree assault to which the State amended is not a lesser included offense of first degree assault; that the court's conclusions of law were not supported by the findings; and there was insufficient evidence to convict Defendant of the amended charge of second degree assault. In a split decision, the Court of Appeals reversed and dismissed without prejudice, holding the amendment was untimely pursuant to CrR 2.1(d). This Court granted the State's petition for review.

## DISCUSSION

The State argues that the Court of Appeals erred when it found the amendment of the information to second degree assault violated Defendant's rights under Const. art. I, § 22, the Sixth Amendment, and CrR 2.1(d).

■■■ Washington Const. art. I, § 22 provides in part: "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him . . . ." Under this provision, a defendant has the right to be informed of the charges against him and to be tried only for offenses charged. *State v. Pelkey*, 109 Wn.2d 484, 489, 745 P.2d 854 (1987); *State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988). Both the Sixth Amendment and Const. art. I, § 22 operate to guarantee the defendant has sufficient notice of the charges he faces. Accordingly, a midtrial amendment of an information is "reversible error per se even without a defense showing of prejudice." *State v. Markle*, 118 Wn.2d 424, 437, 823 P.2d 1101 (1992); *State v. Pelkey*, 109 Wn.2d at 491.

This rule is subject to two statutory exceptions: where a defendant is convicted of a lesser included offense of the one charged pursuant to RCW 10.61.006, and where a defendant is convicted of a crime which is an inferior degree pursuant to RCW 10.61.003. *Id.* at 488; *State v. Foster*, 91 Wn.2d 466, 471, 589 P.2d 789 (1979). These exceptions are well established in Washington case law.

> While it is true that the jury may find a defendant not guilty of the crime charged, but guilty of an offense of lesser degree, or of an offense necessarily included within that charged, it is also true that "accusation must precede conviction," and that no one can legally be convicted of an offense not properly alleged. The accused, in criminal prosecutions, has a constitutional right to be apprised of the nature and cause of the accusation against him. Const., art. 1, § 22. And this can only be made known by setting forth in the indictment or information every fact constituting an element of the offense charged. This doctrine is elementary and of universal application, and is founded on the plainest principle of justice.

*State v. Ackles*, 8 Wash. 462, 464-65, 36 P. 597 (1894).

In *Pelkey*, the State successfully moved to amend the information charging bribery to the crime of trading in special influence after it had rested its case in chief. This

court concluded that the exception for midtrial amendment pursuant to RCW 10.61.003 did not apply because the amended charge is not a lesser included offense of the charged crime. *Pelkey*, 109 Wn.2d at 488.

A lesser included offense exists

when all of the elements of the lesser offense are necessary elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime.

*Id.* (citing *State v. Bishop*, 90 Wn.2d 185, 191, 580 P.2d 259 (1978)).

The Court of Appeals in this case applied the per se reversal rule of *Pelkey* because it concluded that the exception for an amendment to a lesser included offense was not satisfied. The court noted that the elements of first degree assault, RCW 9A.36.011(1)(c) are distinctly different from the elements of second degree assault inflicted by torture under RCW 9A.36.021(1)(f).

To commit the crime of first degree assault, the actor must intentionally inflict great bodily harm, which is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ[.]" RCW 9A.04.110(4)(c).

Second degree assault by torture requires that a person knowingly inflict "bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture." RCW 9A.36.021(1)(f). In *State v. Brown*, 60 Wn. App. 60, 65, 802 P.2d 803 (1990), the Court of Appeals approved an instruction for second degree assault by torture defining torture as " 'the infliction of severe or intense pain as punishment or coercion, or for sheer cruelty.' " (Citing Jury Instruction 9). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2414 (1969) defines torture as

the infliction of intense pain (as from burning, crushing,

wounding) to punish or coerce someone . . . anguish of body or mind: excruciating agony: extremity of suffering . . . an extreme annoyance or severe irritation: an intense strain: something pernicious or baneful . . . extreme strain or abuse
. . . .

The Court of Appeals correctly found that first degree assault under RCW 9A.36.011(1)(c), and second degree assault under RCW 9A.36.021(1)(f) have different elements.[2] The court was also correct when it concluded that the defendant could commit first degree assault by inflicting great bodily injury without committing second degree assault by torture. Thus, RCW 9A.36.021(1)(f) is not a lesser included crime of RCW 9A.36.011(1)(c).

The State argues, however, and the Court of Appeals dissent agrees, that second degree assault is an inferior degree of the crime of first degree assault pursuant to RCW 10.61.003, and such an amendment is permitted mid-trial. The Court of Appeals majority did not discuss whether the amendment to charge second degree assault by torture might be an amendment to charge an inferior degree, and thus, fit within the second statutory exception to the *Pelkey* rule regarding midtrial amendments.

A crime is an inferior degree of another when

(1) the statutes for both the charged offense and the proposed inferior degree offense "proscribe but one offense"; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.

State *v. Foster*, 91 Wn.2d 466, 472, 589 P.2d 789 (1979) and State *v. Daniels*, 56 Wn. App. 646, 651, 784 P.2d 579 (1990).

In *State v. Foster*, 91 Wn.2d 466, the defendant was charged with first degree assault with intent to kill. At the close of evidence, and over defendant's objection, the

---

[2]In his dissent, Judge Munson agreed on this point. *See State v. Peterson*, No. 14550-6-III, slip. op. at 3 (Wash. Ct. App. July 25, 1996) (Munson, J., dissenting).

trial court gave instructions on three alternative means of committing second degree assault, including negligent assault. Foster was convicted of second degree assault. On appeal, the defendant argued that he could be convicted only of second degree negligent assault, one of the three alternative means, if it were a lesser included offense of assault in the first degree. The Court rejected this argument and affirmed the conviction, finding that the notice requirements of the Sixth Amendment and Const. art. I, § 22 were satisfied by RCW 10.61.003. RCW 10.61.003 provides:

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

Addressing the defendant's concerns with notice the court concluded that

> both the first-degree and second-degree assault statutes proscribe but one offense—that of assault. Since the offense upon which the trial court instructed the jury is a lesser degree crime of the one with which he was charged and the two crimes, namely assault, are not separate and distinct from one another, we conclude that appellant was given sufficient notice to satisfy the requirements of Const. art. 1, § 22 and the Sixth Amendment.

*Foster*, 91 Wn.2d at 472.

The State correctly argues that *Foster* is dispositive. The Sixth Amendment and Const. art. I, § 22 entitle the defendant to notice of the charge he will face at trial and, therefore, he may be convicted only of charges contained in the information. In *Foster*, the Court found that RCW 10.61.003 provides sufficient notice to a defendant that he may be convicted of any inferior offense of assault, even though the inferior degree may not be a lesser included degree of the charged crime. The amendment from first degree to second degree assault does not offend the Sixth Amendment or Const. art. I, § 22.

The Court of Appeals also relied on CrR 2.1(d) in its decision to reverse. That rule provides:

> The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

The court found that the amendment after the close of evidence prejudiced the defendant's constitutional rights within the meaning of CrR 2.1(d). In *Pelkey*, this Court explained that CrR 2.1(d) "operates within the confines of article 1, section 22." *Pelkey*, 109 Wn.2d at 490. At issue in *Pelkey* was whether the defendant was required to demonstrate prejudice resulting from a midtrial amendment. The Court held no prejudice need be shown when the amendment is to a different charge and the amendment is made after the State has rested. The prejudice referred to in *Pelkey* is with regard to notice under Const. art. I, § 22.

As explained earlier, there is no prejudice under Const. art. I, § 22 or the Sixth Amendment when the amendment is to a lesser included offense or an inferior degree crime. *Foster*, 91 Wn.2d at 472. Accordingly, CrR 2.1(d) was not violated in this case.

Finally, the amendment in this case was unnecessary. RCW 10.61.003 provides that a jury may find a defendant guilty of any degree inferior to that charged in the information. Thus, a jury, or in this case the judge, may properly find defendant guilty of any inferior degree crime of the crimes included within the original information.

The Court of Appeals is reversed and Defendant's conviction reinstated.

DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, and SANDERS, JJ., concur.

TALMADGE, J. (concurring) — I agree with the majority opinion except in its needless discussion of whether the State's motion to amend pursuant to CrR 2.1(d) was proper. We do not need to reach the question of whether

CrR 2.1(d) was violated in this case because the trier of fact may find a defendant guilty of any crime of a degree inferior to that charge in the information. RCW 10.61.003. As the majority properly recognized, Majority op. at 893, the State's motion to amend pursuant to CrR 2.1(d) was unnecessary. "Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented." *Manning v. Upjohn Co.*, 862 F.2d 545, 547 (5th Cir. 1989).

DURHAM, C.J., concurs with TALMADGE, J.