[No. 59156-3.    En Banc.    December 3, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. RODNEY HOUF, *Respondent*.

*Dennis DeFelice, Prosecuting Attorney,* and *Kevin P. Donnelly, Deputy,* for petitioner.

*Linda L. Edmiston,* for respondent.

DURHAM, J. — The respondent, Rodney Houf, after presenting an alibi defense at a jury trial, was convicted of unlawful delivery of a controlled substance. The trial judge imposed an exceptional sentence based solely on the judge's personal belief that Houf had lied during his testimony. The Court of Appeals reversed the exceptional sentence, holding that this circumstance did not constitute a sufficient basis for an exceptional sentence under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A.010 *et seq.* We affirm the decision of the Court of Appeals and remand this case to the trial court for resentencing within the standard range.

Because of the nature of this appeal, the evidence presented to the trial court must be discussed in some detail. Rodney Houf was arrested on June 30, 1990 in Franklin County and accused of one count of unlawful delivery of a controlled substance (cocaine). He was arrested during a "street sweep", in which problem areas are targeted by the police. The State's case consisted of testimony by six witnesses, plus the physical evidence.

The State's first witness, Detective Dennis Taylor of the Richland Police Department, testified that on the night of June 30, he was working surveillance with Detective Rodgers, while Detective Higgins and a confidential informant, Ms. Rondalyn Vik, worked undercover. At about 8:27 p.m., Detective Taylor observed Detective Higgins and Ms. Vik, who were in an unmarked police vehicle, make contact with a "black male with a white tank top and flower-designed

shorts." Report of Proceedings (RP), at 14. After a brief conversation, the suspect got into the car and they drove off.

Detective Taylor testified that he and his partner followed the car and observed the suspect get out of the car a number of blocks away. At that time, he recognized the suspect as Houf.[1] Houf returned to the car a few minutes later, and they drove off. Houf was dropped off by the undercover officer in the vicinity of Kurtzman Park. After a short foot pursuit, Houf was arrested by the surveillance officers.

Detective Rodgers' testimony corroborated that of Detective Taylor. Rodgers also made a positive identification of the defendant as the person he saw leaving and returning to the undercover vehicle. Ms. Rondalyn Vik, a confidential informant who had known the defendant for about a year, corroborated the two officers' testimony. The undercover police officer, Detective Higgins, testified to essentially the same set of events. He also testified that the person who delivered cocaine to him responded to the name "Rodney".

The defense's case consisted of three witnesses plus the defendant's testimony. The first witness, Ms. Carolina Turner, testified that she was at Kurtzman Park from 8 until 9 p.m. on the evening in question, and that the defendant was also there during that time. She could not remember when Houf left, but was certain that he was there until 9 p.m. The next witness, Mr. George Lee Havens, testified that Houf was still at the park when he left between 8:15 and 8:30 p.m. The following witness, Ms. Tammy Avery, testified that she was with Houf at the park on the night in question, that she gave Houf $5 at about 8 p.m. to go to the store to get beer, and that he returned with the beer about 5 or 10 minutes later. She testified that Houf then remained with her while she played cards, but that he left at about 8:45 p.m. to make a phone call.

---

[1]He was familiar with Houf because Houf had flagged him down a week before to sell him cocaine, but had taken the money without ever delivering the drugs. Houf was picked up an hour after that incident and charged with third degree theft.

Houf proceeded to take the stand. He testified that he had been at Kurtzman Park for the entire evening up until the time he had been arrested. He stated that he was on his way to make a phone call when he was arrested. Houf flatly denied ever delivering cocaine to anyone. Houf insisted that on the night of his arrest: "I was wearing my blue Bugle Boy's [*sic*] and an orange shirt and I had a black hat on." RP, at 101-02. He also testified that he had received a ride with Detective Taylor 1 week before this arrest, at which time Taylor had given him $20 to buy beer, not cocaine. Houf testified that the State's witnesses were lying.

The jury returned a verdict of "guilty". At the sentencing hearing, the prosecutor explained that the standard range for the case was 21 to 27 months, and recommended a sentence at the top of the range. Houf made a brief statement on his own behalf. He did not, however, comment as to his guilt or innocence.

The trial judge proceeded to pronounce sentence. "What you [Houf] did was, in my view, pretty serious, and I'm not talking about the crime itself. . . . As cocaine cases go, it's kind of a minor case, but what you did was to try to pervert the whole system by lying." Sentencing Report of Proceedings (SRP), at 6. He went on to discuss the witnesses presented by the defense:

> Now, your witnesses — one, it's bad enough to lie, commit perjury, even though it's in your own self-defense. . . . [b]ut it's even more serious to get everybody else to lie for you, too, all your friends.
> Now I am not prepared to say that all your friends lied. In fact, they weren't very good alibi witnesses because some of them certainly did not really support your alibi, the timing part of it.

SRP, at 7. The judge then sentenced Houf to 24 months for the delivery charge, "plus 12 months for lying". SRP, at 11.

Houf appealed the exceptional sentence only. The Court of Appeals looked to RCW 9.94A.210(4) and found that the trial court's reason for imposing the exceptional sentence was

not justified.[2] *State v. Houf*, 64 Wn. App. 580, 583, 825 P.2d 736 (1992). The Court of Appeals reversed the exceptional sentence and remanded for resentencing within the standard range. *Houf*, at 584. This court granted the State's motion for discretionary review. We review the issue under a "matter of law" standard. *State v. Grewe*, 117 Wn.2d 211, 215, 813 P.2d 1238 (1991). We now affirm the Court of Appeals.

▪ The SRA provides generally for standardized sentencing within a set range. *See* RCW 9.94A.120(1). However, exceptional circumstances may provide a basis for departing from that standard range. RCW 9.94A.120(2) provides:

> The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

The SRA goes on to provide guidance for such departure by listing some of the aggravating and mitigating factors to be considered in meting out an exceptional sentence. RCW 9.94A.390. The "Aggravating Circumstances" subsection of RCW 9.94A.390 was amended in 1986 by changing the word "offense" to "current offense". Laws of 1986, ch. 257, § 27, p. 936. "The . . . amendment added the adjective 'current' to subsection (2) to make it clear that aggravating factors only apply to the *circumstances surrounding the charged offense*." (Italics ours.) Washington Sentencing Guidelines Comm'n, *Implementation Manual*, § 9.94A.390 comment, at II-77 (1991) (hereinafter *Implementation Manual*). Testimony at trial cannot be fairly labeled a "circumstance surrounding the charged offense".

---

[2]RCW 9.94A.210(4) provides the proper standard for reviewing the imposition of an exceptional sentence:

"To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient."

The SRA also contains what has become known as the "real facts" doctrine. This section provides that:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. . . . Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in [the statute].

RCW 9.94A.370(2). The commentary found in the *Implementation Manual* explains that this policy was adopted in order to limit sentencing decisions to the facts which were "acknowledged, proven, or pleaded to". *Implementation Manual*, at II-73 through II-74. This court has similarly interpreted the doctrine as excluding consideration during sentencing of uncharged crimes or charged crimes which were later dismissed. *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987).

The State argues that courts have fashioned an exception to the "real facts" doctrine for actions by a defendant which may subvert the criminal justice system.[3] Petitioner's primary authority for this contention is *State v. Cook*, 52 Wn. App. 416, 760 P.2d 964 (1988). The defendant in *Cook*, who ultimately entered a guilty plea, lied about his name and identity from the time of his arrest, throughout plea negotiations, and up until sentencing, whereupon the trial judge imposed an exceptional sentence, based in part on the defendant's mendacity. The Court of Appeals in *Cook* recognized that the defendant could be charged with additional crimes on the basis of his lies. *Cook*, at 420. Nevertheless, the *Cook* court held that "an exception for acts . . . that are designed to subvert or defraud the criminal justice process generally and the proportionality goals of the SRA, specifically, is consistent with the intent of the act." *Cook*, at 421.

---

[3] The trial judge relied on *In re Luft*, 21 Wn. App. 841, 589 P.2d 314 (1979) and *United States v. Grayson*, 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610 (1978) as providing authority for the exceptional sentence. However, neither of these cases involved the SRA, and neither case is helpful in deciding the specific issue at hand.

■ We find that this exception is not consistent with either the intent or the actual language of the SRA. *See also State v. Martinez*, 66 Wn. App. 53, 831 P.2d 165 (1992) (refusing to adopt *Cook* exception); *State v. Henshaw*, 62 Wn. App. 135, 813 P.2d 146 (1991) (holding *Cook* exception only applied to uncharged misdemeanors). The SRA structures the sentencing decision to consider only the actual crime of which the defendant has been convicted, his or her criminal history, and the circumstances surrounding the crime. *See* David Boerner, *Sentencing in Washington* 2-30 through 2-33 (1985); *State v. Barnes*, 117 Wn.2d 701, 710, 818 P.2d 1088 (1991). Allowing an exceptional sentence based on a belief that the defendant lied at trial would allow the defendant to be punished for a wholly unrelated crime with which he has never been charged, much less convicted.[4] *See McAlpin*, at 466-67; *see also Grayson*, 438 U.S. at 55-58 (Stewart, J., dissenting) (noting that without a determination that defendant's testimony was actually false, additional punishment is not merited). We agree with the *Martinez* court's statement: "Although it is not disputed [that the defendant] lied under oath, that is not the offense for which he was being sentenced. Lying under oath is a separate offense, which the State could charge if it wished to do so." *Martinez*, at 56.

Alternatives to an exceptional sentence for lying under oath are available to the judge and prosecutor by pursuing a perjury conviction. The Washington Criminal Code provides for first and second degree perjury, which are felonies, and false swearing, which is a gross misdemeanor. RCW 9A.72. Additionally, RCW 9.72.090 provides a mechanism for a judge to immediately jail a witness, or demand a witness' appearance, in order to answer to a charge of perjury whenever it appears probable to that judge that perjury has been committed.

---

[4] Additionally, under article 1, section 22 of the Washington State Constitution, "[i]n criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him". Pursuant to that language, we have recognized that "an accused person must be informed of the criminal charge he or she is to meet at trial, and cannot be tried for an offense not charged." *State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988).

■ We hold, based on the explicit language of RCW 9.94A-.390, as well as consideration of the "real facts" doctrine found in RCW 9.94A.370(2), that a judge's determination that a defendant lied under oath is not a sufficient basis for an exceptional sentence under the Sentencing Reform Act of 1981. The "real facts" doctrine does not allow facts which establish the elements of crimes completely unconnected to those charged to be considered in meting out an exceptional sentence. Moreover, the 1986 amendments to the SRA indicate that any aggravating factors considered in imposing an exceptional sentence should be related to the crime with which the defendant is charged. There is no binding precedent in the case law which would mandate departure from the clear language of the statute. While judges and prosecutors may be justifiably annoyed by having to endure a defendant's testimony which flies in the face of the clear weight of the evidence, the proper remedy is an additional charge of perjury. We affirm the Court of Appeals, and remand this case to the trial court for resentencing within the standard range.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, GUY, and JOHNSON, JJ., concur.